**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RODNEY MCCOY,

        Petitioner,              Case Number: 2:09-CV-10219

v.                                  HONORABLE VICTORIA A. ROBERTS

THOMAS BELL,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on Petitioner Rodney McCoy's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. McCoy, who is released on parole, challenges his convictions for first-degree criminal sexual conduct, first-degree home invasion, aggravated stalking, and domestic violence. Respondent has filed an answer in opposition to the petition. For the reasons set forth below, the Court denies the petition.

**I.**

McCoy's convictions arise from events occurring at the home of his ex-girlfriend, Kassandra Jones, during the early morning hours of March 11, 2006. Jones testified that McCoy called her at approximately 6:45 a.m., on that date. McCoy told her that he wanted to bring some money by the home. He periodically paid Jones money as child support for their two children. Jones said it was too early in the morning and McCoy should bring it by the home later in the day. McCoy persisted, calling about thirty

minutes later, insisting that he bring the money to her. Jones testified that she told McCoy to leave the money in the mailbox. Shortly thereafter, McCoy called again and told Jones that he was outside the home and she should come to the door. He did not want to leave the money in the mailbox because he feared someone would steal it. After initially refusing to do so, Jones agreed to come to the door. She testified that as she opened the door, McCoy pushed the door open, forcing his way into the home. Jones testified that she did not intend to allow McCoy into her home.

After entering the home, McCoy took out a gun and hit Jones on the side of her head with it. He ordered her to go upstairs and take off her clothes. Jones testified that McCoy pushed her upstairs to the bedroom, pushed her down on the bed, pulled off her pants and performed cunnilingus on her. He then had intercourse with her, while wearing a condom. McCoy washed up in the bathroom and left Jones home. Jones called a neighbor, Jamekia Wafer, to tell her what happened. Wafer accompanied Jones to the police department. Jones gave a statement to a police officer, Anita King. Jones went to the hospital where a full rape kit was collected. Two days later, she obtained a personal protection order against McCoy.

Jones testified that when she and her children exited church, approximately two weeks later, McCoy was outside the church waiting for her. She walked to her car and dialed 911. The 911 operator told her to drive to a police station. She did, with McCoy following her. When they arrived at the police station, a police officer arrested McCoy. Jones further testified that, between the time she obtained the PPO and the time he was

arrested, McCoy called her home many times. Sometimes he left messages on her answering machine, other times he did not. Jones saved some of the voice messages. A tape of the messages was admitted into evidence and played for the court. McCoy made several references in the messages to keeping his eye on Jones, watching her, and seeing her when Jones did not think he could see her. He also accused her of sneaking over to another man's house.

Jamekia Wafer testified that Jones called her on the morning of March 11, 2006. In response to the phone call, Wafer went to Jones' house and found Jones crying. She observed that Jones had a bump on her forehead. Jones told her that McCoy had raped her. Wafer took Jones to the police station.

Police Officer Anita King was the only witness presented by the defense. She testified that she was working the precinct's report desk on the morning of March 11, 2006. She took Jones' statement that morning. She testified that she included all relevant information told to her by Jones. Officer King testified that Jones stated that she allowed McCoy to enter her home. She also testified that the report did not indicate that McCoy performed cunnilingus on Jones. If Officer King had been told that, she would have included that information in the report. But, on cross-examination, Officer King acknowledged that it was possible that she had omitted something from the report, although she had no recollection of having done so.

## II.

Following a bench trial in Wayne County Circuit Court, McCoy was convicted of

first-degree criminal sexual conduct, first-degree home invasion, aggravated stalking, and domestic violence. He was acquitted of another charge of first-degree criminal sexual conduct, felonious assault, felon in possession, and felony firearm. On November 17, 2006, McCoy was sentenced as a second habitual offender to 51 months to 10 years in prison for the criminal sexual conduct conviction, 1 to 30 years in prison for the home invasion conviction, 1 to 7-1/2 years in prison for the stalking conviction, and 90 days time served for the domestic violence conviction.

McCoy filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

> I. Mr. McCoy was denied his due process right to a fair trial, to present a defense, and/or effective assistance of counsel when two witnesses crucial for the defense were not subpoenaed or produced at trial.
>
> II. The trial court erred by refusing to grant Mr. McCoy a new trial where evidence was presented at a hearing demonstrating that the complaining witness lied at trial about whether the rape and other crimes really happened.

McCoy also filed a motion for remand so the trial court could conduct an evidentiary hearing regarding his ineffective assistance of counsel claim.

The Michigan Court of Appeals denied the motion to remand, *People v. McCoy*, No. 274834 (Mich. Ct. App. Jan. 23, 2008), and affirmed McCoy's convictions. *People v. McCoy*, No. 274834 (Mich. Ct. App. Jan. 31, 2008). The Michigan Court of Appeals denied McCoy's motions for reconsideration of its order denying remand, *id.* (March 19, 2008), and its opinion affirming his convictions. *Id.* (Apr. 3, 2008).

McCoy filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. McCoy*, 483 Mich. 975 (Mich. Sept. 9, 2008).

McCoy then filed the pending petition. He raises these claims:

I.  Mr. McCoy was denied effective assistance of counsel when his trial attorney failed to investigate witnesses who would have clearly undermined the credibility of the sole witness against him in his trial that revolved around a close credibility question.

II. Mr. McCoy is entitled to an evidentiary hearing to establish the facts necessary to establish his claim of ineffective assistance of trial counsel where the Michigan Court of Appeals unreasonably denied his motion for such a hearing.

### III.

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal

6

court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.**

Petitioner claims that he was denied the effective assistance of trial counsel by counsel's failure to investigate witnesses who would have undermined the credibility of the sole witness against him. He also seeks an evidentiary hearing to develop the facts supporting his claim.

The Supreme Court recently held that, when a petitioner seeks habeas relief on a claim that has been "adjudicated on the merits in state court proceedings," 28 U.S.C. § 2254(d)(1), federal court review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). If a petitioner raises a claim not adjudicated on the merits by the state courts, the federal court has discretion to consider new evidence under 28 U.S.C. § 2254(e)(2). *Id.* at 1401. Section 2254(e)(2) bars a federal court from holding an evidentiary hearing unless the petitioner satisfies certain statutory requirements.

In this case, the Michigan Court of Appeals clearly adjudicated McCoy's ineffective assistance of counsel claim on the merits. And, McCoy seeks relief under § 2254(d)(1), arguing that the state court's adjudication was an unreasonable application of clearly established Federal law. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 1400. Thus, under *Pinholster*, the Court's review is confined to the record before the state courts and the court denies McCoy's request for an evidentiary hearing. *Id.* at 1398.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258

8

(6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __

U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, __ U.S. __, 131 S. Ct. at 788.

McCoy argues that his trial attorney was ineffective in failing to investigate and call three witnesses, the victim's former boyfriend, Jerry Brazell, the petitioner's mother, Ida McCoy, and the petitioner's sister, Lashone Collins. On the day set for sentencing, the trial court heard testimony regarding trial counsel's motion for a new trial.

Brazell testified that, at the time of the preliminary examination, he and Jones were dating and he accompanied her to the preliminary examination. Prior to the date of the

preliminary examination, Jones express a lot of anger toward McCoy and stated that if she could not be his girlfriend, the woman he was dating could not either. According to Brazell, Jones also told him that McCoy had made her life miserable by leaving her and that if McCoy didn't return to her she would throw one of his children out the window. Brazell asked Jones if McCoy had raped her and she replied, "not really." She said that if McCoy wanted her to drop the case, his mother or grandmother should pay her because they had "plenty of money." Jones specified an amount of $3,000. Brazell testified that he was contacted by a defense investigator prior to trial and advised the investigator that he did not want to get involved in the case. Brazell learned after the trial that McCoy had been found guilty and decided to cooperate with defense counsel.

    Ida McCoy, Petitioner's mother, testified at the hearing on petitioner's motion for new trial. She testified that she often cared for Jones and her son's two children. She had frequent contact with Jones when Jones came to pick up the children. Sometime before April 11, 2006, Jones told Ida that she "sure could use three thousand dollars." Ida asked Jones what she meant by that, but Jones did not respond. Ida testified that she informed her son of this conversation sometime prior to his trial.

    McCoy did not testify at the hearing. But, he submitted an affidavit in support of his motion to remand filed in the Michigan Court of Appeals. In his affidavit, McCoy stated that, two to three weeks prior to trial, Brazell spoke to him in prison. Brazell told McCoy that Jones had admitted that she had not been raped by McCoy. Jones also told Brazell that she lied because if she could not have McCoy, she did not want his girlfriend

to have him either.  McCoy stated that he immediately advised his trial attorney what Brazell had told him.  McCoy stated that he also advised his trial attorney that Jones had told his mother that she could use three thousand dollars.  Finally, McCoy stated that his sister, Lashone Collins, was telephoned by Jones at approximately 7:40 a.m. on March 11, 2006.  Jones reportedly told Collins that McCoy pulled a gun on her and raped her.  Jones also purportedly told Collins that she was taking the condom he used to the police station.  McCoy states that he informed trial counsel of his conversation with Collins, but Collins was not called to testify.

While he did not testify at the hearing, trial counsel responded to several questions from the trial judge regarding when he knew about these witnesses and their potential testimony.  Trial counsel stated that he had no knowledge of Brazell's testimony prior to trial because Brazell refused to speak to his investigator.  The trial court found counsel's statement credible.

McCoy argues that his attorney was ineffective in failing to call Brazell, Ida McCoy and Collins to testify because their testimony would have undermined Jones' credibility and provided a motive for her to fabricate her testimony.

The Michigan Court of Appeals denied McCoy's ineffective assistance of counsel claim.  Although not citing *Strickland,* the state court cited case law that plainly incorporated that standard.  First, the Court held that Ida McCoy's testimony that Jones expressed a need for $3,000 had not been sufficiently linked to McCoy's case to render it relevant and admissible.  Additionally, the state court held that McCoy had not shown

12

that counsel was aware of Ida McCoy's potential testimony prior to trial.

Second, the Michigan Court of Appeals held that defense counsel was aware of some of Brazell's proposed testimony because, on cross-examination, he asked Jones whether she ever expressed feelings of jealousy over McCoy's new girlfriend to Brazell. But, the state court held, the record did not show counsel was aware of anything else Brazell might offer in support of the defense. Brazell declined to speak to defense counsel or his investigator and, the state court held, McCoy failed to inform defense counsel about the nature of Brazell's proposed testimony. The state court concluded, "[d]efense counsel 'cannot be found ineffective for failing to pursue information that his client neglected to tell him.'" *McCoy*, slip op. at 2, *quoting People v. McGhee*, 268 Mich. App. 600, 626; 709 N.W.2d 595 (2005). The state court did not specifically address McCoy's claim that counsel was ineffective for failing to present Collins' testimony.

According the state court the "deference and latitude" required under the AEDPA, *Richter*, 131 S. Ct. at 785, this Court finds that the state court's conclusion was a reasonable application of *Strickland*. First, with respect to counsel's failure to subpoena Brazell, Brazell's testimony may have impeached portions of Jones' testimony. But, it would have been reasonable for defense counsel to conclude that the risk of calling an uncooperative witness whose testimony was uncertain outweighed the potential benefits. The Michigan Court of Appeals held that McCoy did not inform defense counsel of the full extent of Brazell's possible testimony. Counsel was not ineffective for failing to call Brazell when his client did not provide him with all of the relevant information. *Accord*

13

*Collins v. Francis*, 728 F.2d 1322 (11th Cir.1984) (trial counsel was not ineffective for failing to investigate witnesses about whom defendant did not tell him); *Turner v. Purkett*, No. 4:06CV1473RWS, 2009 WL 1109359, *6-7 (E.D. Mo. Apr. 24, 2009) (same). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Richter*, 131 S. Ct. at 790, *quoting Yarborough v. Gentry*, 540 U.S. 1, 8, (2003) (*per curiam*).

Second, this Court defers to the state court's evidentiary finding that Ida McCoy's testimony was inadmissible under state law. Thus, counsel was not ineffective in failing to elicit her testimony at trial.

Finally, the state court did not provide reasons for denying McCoy's claim that counsel was ineffective in failing to call his sister to testify. Nevertheless, because the state court adjudicated this claim on the merits, § 2254(d) applies to this claim. *Id.* at 784-85. This Court must determine what arguments or theories "could have supported the state court's decision." *Id.* at 786. McCoy does not present an affidavit from Collins detailing what her proposed testimony would have been. He provides only his own affidavit stating that Jones called Collins on March 11, 2006, and told Collins that McCoy raped her at gunpoint and that she was taking the condom to the police station. Collins' testimony would not have necessarily been favorable to McCoy. Her testimony may have had slight impeachment value because no police reports or trial testimony showed that Jones brought a condom to the police station. However, its potential impeachment value is far outweighed by the fact that it was consistent with two critical pieces of her trial

14

testimony – that she had been raped and that McCoy had a gun.  Under these circumstances, assuming defense counsel was aware of Collins' proposed testimony, it would have been a reasonable tactical decision not to call her as a witness.

Thus, the Court concludes that it was reasonable application of *Strickland* for the Court to conclude that defense counsel was not ineffective.  Habeas relief is denied.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court finds that jurists of reason would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

corpus is **DENIED**.

It is **FURTHER ORDERED** that a certificate of appealability is **DENIED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: October 31, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 31, 2011.

S/Linda Vertriest
Deputy Clerk

---

16